**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MARCEL C. BRISTOL,

Plaintiff,

- against -

QUEENS COUNTY, QUEENS COUNTY DA'S
OFFICE, RICHARD BROWN, DA, KENDIA
HENRY, ADA, NEIL GITIN, ADA, N.Y.P.D. DET.
LYNCH, JOHN DOE 1-5, NASSAU COUNTY,
NASSAU COUNTY DA'S OFFICE, KATHLEEN
RICE, DA, LAUREN DODDATO, ADA, JANE DOE,
ADA, N.C.P.D., DET. RONALD R SCHEPIS,
DET. JOHN HARVEY, et al.,

Defendants.

------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 09-5544 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.   <u>P<span style="font-variant:small-caps">RELIMINARY</span> S<span style="font-variant:small-caps">TATEMENT</span></u>

     Plaintiff Marcel Bristol, appearing *pro se,* filed the instant Complaint alleging violations

of his constitutional rights under the Fourth, Fifth, Eighth, Thirteenth[1] and Fourteenth

Amendments to the Constitution of the United States against Queens County, the Queens County

District Attorney's Office, Queens County District Attorney Richard Brown , Assistant District

Attorney Kendia Henry, Assistant District Attorney Neil Gitin, the New York Police Department

("NYPD"), NYPD Detective Lynch, NYPD Detectives John Does 1-5 (collectively "Queens

County Defendants") as well as Nassau County, the Nassau County District Attorney's Office,

---

[1]      The Thirteenth Amendment officially abolished and prohibited slavery and involuntary
servitude.  U.S. C<span style="font-variant:small-caps">ONST.</span> amend. XIII.  Based on the content of the claims asserted by Plaintiff this
constitutional right is not relevant to this action.

Nassau County District Attorney Kathleen Rice ("DA Rice"), Assistant District Attorney Lauren Doddato ("ADA Doddato"), Assistant District Attorney "Jane Doe" ("ADA Jane Doe"), the Nassau County Police Department ("NCPD"), Detective Ronald R. Schepis and Detective John Harvey (collectively "Nassau County Defendants"). *See DE* 1. The Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") and name the individual Defendants in their personal and official capacities.

Presently before the Court are the Nassau County Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action,[2] and Plaintiff's cross-motion for summary judgment pursuant to Rule 56(c).[3] *See* DE 42, 50. These motions have been referred to me by District Judge Bianco for a Report and Recommendation. Based upon my review of the Complaint, the arguments advanced by both parties in their written submissions, and the applicable case law, I respectfully recommend to Judge Bianco that the Nassau County Defendants' motion to dismiss be GRANTED and that Plaintiff's cross-motion for summary judgment be DENIED.

II.  BACKGROUND

The following information is taken from Plaintiff's Complaint ("Compl.") and the exhibits annexed to it. All facts alleged by Plaintiff are assumed to be true for purposes of deciding a motion to dismiss and are construed in a light most favorable to the plaintiff as the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Grp.,* 570 F.3d 471, 475 (2d Cir. 2009).

---

[2]     The Court notes that the Queens County Defendants filed an Answer on April 19, 2010. *See* DE 31.

[3]     Plaintiff's cross-motion for summary judgment also serves as Plaintiff's opposition to Defendants' motion to dismiss. *See* DE 50.

On January 4, 2008, NCPD Detectives Schepis and Harvey arrested Plaintiff without a warrant for alleged violations of the New York Penal Law, including Sections 190.80 (identity theft, 1st degree), 155.30 (grand larceny, 2nd degree), 155.35 (grand larceny, 3rd degree), 170.10 (forgery, 1st degree) and 170.25 (criminal possession of a forged instrument, 2nd degree). Compl. ¶ 11. Simultaneous with the arrest, the detectives seized $4,915.00 from Plaintiff as the proceeds and/or substituted proceeds of the crimes for which Plaintiff was being charged. *Id.*, Ex. A. Thereafter, the Nassau County Defendants referred the same charges to Queens County. *Id.* ¶ 11. Between March and April of 2008, while Plaintiff was confined in the Nassau County Correctional Center, the Queens County Defendants procured a search warrant from the Queens County Criminal Court to search Plaintiff's home. *Id.* ¶ 16.

On July 30, 2008, Plaintiff was "re-arrested" at the Nassau County jail for alleged new offenses committed in Queens County and was taken into custody by NYPD Detectives Lynch and John Doe 1 and transported to the Queens District Attorney's Office. *Id.* ¶¶ 17-18. Upon arrival, the Detectives placed Plaintiff in a "cage like cell in plain view of the cubical offices across the floor." ¶ 18. After approximately 30 minutes, Detective Lynch yelled over to Defendant Assistant District Attorney Kendia Henry, "Kendia your prisoner is here." *Id.*

Later that day, the NYPD Detectives transported Plaintiff from the Queens County District Attorney's Office to the criminal courthouse in Queens County where Plaintiff was processed and fingerprinted. *Id.* ¶ 20. After being informed that it would take two hours to process the fingerprint reports, the NYPD Detectives transported Plaintiff back to the District Attorney's Office in an unmarked car. Plaintiff states that the NYPD Detectives chose to park "on a adjacent Street from the building" and, as a result, he was "forced to walk in shackles

through the streets in broad day light, under the curiosity and the watchful eyes of pedestrians and motorists." *Id.* The Complaint states that Detective Lynch patted Plaintiff's shoulder and said "sorry, we had to do it like this." *Id.* In total, the walk to the unmarked car was 15 minutes. Two hours later, the Detectives repeated the process by transporting the Plaintiff back from the Queens County Attorney's Office to the courthouse. *Id.* The Plaintiff was arraigned that same day. *Id.* ¶ 19.

On March 16, 2009, while Plaintiff was still housed at the Nassau County jail, NYPD Defendants John Doe 2 and John Doe 3 took Plaintiff into custody. *Id.* ¶ 22. Dressed in orange prison garb, and after being shackled, the Plaintiff was

> paraded and banded as a vile criminal, in plain view and broad day light, around the adjacent streets of the Queens Criminal court house; and through the main public entrance of access to the court building; and through the main public entrance of access to the court building, and trough [sic] the main lobby; with the eyese of the grand public fixated on him.

*Id.* At the courthouse, Plaintiff was first kept in the hallway in the main lobby while one of the Detectives spoke on the phone to Defendant Assistant District Attorney Gitin ("ADA Gitin") but then was kept by the stairway to that hallway. *Id.* ¶ 23. However, Plaintiff was taken back to the District Attorney's Office, this time through the inside of the courthouse, where Plaintiff's assigned counsel notified him that "there is a plea offer of four years, which is not going to be available after the grand jury presentation, scheduled for today." *Id.* After declining the plea offer, the Plaintiff "was paraded back through the main lobby of the court house" by the Detectives and was brought to Judge Mullins' courtroom where the Judge referred the case to the grand jury part. *Id.* ¶ 24.

The Complaint states that the Plaintiff was then taken to the 4th floor of the courthouse via public elevator by a Detective who needlessly held him tightly through the shackled belt. *Id.* Since the court was in session with another case and was thereafter going on an hour recess, Plaintiff was left shackled on a bench near the courtroom entrance guarded by the Detectives until the court returned. *Id.* ¶ 25. When the case was called, Plaintiff's defense counsel objected to Plaintiff's testifying in prison garb. *Id.* ¶ 26. The Complaint states that ADA Gitin pulled out a "cheap sweater" from his bag and told the judge Plaintiff could wear that instead. After the court sustained defense counsel's objection, the case was adjourned and Plaintiff returned to the Nassau County jail. *Id.* Three days later, on March 19, 2009, two NYPD Detectives took Plaintiff into custody and the "same spectacle was repeated; except that plaintiff was in civilian clothing." *Id.* ¶ 28. On this occasion, while being "paraded in shackles . . . leading to the main entrance of the building where the grand jury was allegedly empaneled," two pedestrians apparently shouted "Old man was it worth it" and "who did you kill." *Id.*

On April 22, 2009, NYPD Detectives again took Plaintiff from the Nassau County jail, paraded him in the same manner as before and took him to a courtroom in the main lobby of the courthouse where he was arraigned on a 34 count indictment "derived from the same alleged charges and transaction of the Nassau County accusatory instrument." *Id.* ¶ 29. On June 25, 2009, a presiding judge of the Queens County Criminal Court granted Plaintiff's motion and dismissed the 34-count indictment in its entirety. *Id.* ¶ 30.

On July 20, 2009, subsequent to the indictment being dismissed in Queens County, Plaintiff was transferred from the Nassau County jail to the correctional facility at Riker's Island where he endured "the most inhuman, unsanitary, and unhygenic [sic] condition yet." *Id.* ¶ 32.

Apparently, the Plaintiff was kept the first night with 32 other inmates in a 15-person cell that had only one toilet. Here, Plaintiff was forced to sleep on the floor without a bed or blanket. More than 24 hours passed before Plaintiff was assigned to a bed in the general population. *Id.* Plaintiff was incarcerated at Riker's Island until July 27, 2009 when he was returned to the custody of the Nassau County Correctional Center. The Complaint states that at no time during the detention at Riker's Island was Plaintiff charged with any crime or produced before a judge. *Id.*

The last underlying incident forming the basis of Plaintiff's claims occurred on September 30, 2009, when Nassau County Assistant District Attorney Anne Huggard (not a named Defendant here) sent a letter to Plaintiff on behalf of Defendant District Attorney Rice regarding the $4,915 seized from Plaintiff upon his arrest on January 4, 2008. *Id.* ¶ 35 and Ex. A. This letter provided the Plaintiff with an opportunity to settle an impending forfeiture claim against him for the money seized on the day of his arrest. *Id.,* Ex. A.

## III. ALLEGATIONS SET FORTH IN THE COMPLAINT

The Plaintiff asserts 27 causes of action against the various Defendants.[4] Compl. ¶ 41. Taking Plaintiff's Complaint as a whole, the Court construes the pleading to raise the following §1983 claims: (1) false arrest pursuant to the Fourth Amendment; (2) illegal search and seizures

---

[4] However, certain claims alleged by Plaintiff do not assert a valid cause of action. For example, in causes of action 25 through 27, Plaintiff alleges separate actions for each type of relief he seeks (*i.e.* damages, punitive damages and a restraining order). In addition, in cause of action 24, Plaintiff asserts that Defendants improperly used the U.S. mail service to proffer misrepresentations to keep control over Plaintiff's property. However, even assuming for the sake of argument that the Nassau County Defendants violated the federal mail fraud statute, there is no private right of action for such a violation. *See Pitts v. Comm'r of Internal Revenue*, No. 05 Civ. 1313, 2005 WL 1278528, at *4 (S.D.N.Y. May 10, 2005).

pursuant to the Fourth Amendment; (3) malicious prosecution grounded in the Fourth and Fourteenth Amendments; (4) double jeopardy pursuant to the Fifth Amendment; (5) cruel and unusual punishment pursuant to the Eighth Amendment; and (6) municipal liability.[5]

## IV.    STANDARD OF REVIEW

The Nassau County Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *See* Mem. of Law in Supp. of  Defs.' Mot. To Dismiss ("Defs.' Mem.") at 9-15.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first

---

[5]     Plaintiff also alleges, in passing, equal protection violations.  *See* Compl. ¶ 3(d). However, other than this bare allegation, Plaintiff fails to allege any "purposeful discrimination directed at an identifiable or suspect class."  *See Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)).

"identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In addition, where, as here, a plaintiff is proceeding *pro* se, the complaint must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, 2009 WL 1835939 *3 (S.D.N.Y. Jun. 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Therefore, a court must construe a *pro se* plaintiff's pleading broadly and interpret it to raise the strongest arguments that it suggests. *See Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Weixel v. Bd. of Educ. Of the City of New York,* 287 F.3d 138, 145-46 (2d Cir. 2002).

## V.    MOTION TO DISMISS

### A.    Preclusion

Before addressing the substantive merits of Plaintiff's claims, the Defendants argue that the Plaintiff's claims are barred. *See* Defs.' Mem. at 5-9. Defendants assert that Plaintiff's suit is duplicative of an earlier federal suit initiated by Plaintiff in this District, and, thus, the Court

should dismiss this action. *See* Defs.' Mem. at 5-6. Specifically, Defendants maintain that the parties in this suit are the same or are in privity with those in the action filed under Docket No. 08-CV-3480 (hereafter "*Bristol I*") and that the issues in both actions arise from a common nucleus of operative facts. *Id.* The Plaintiff, however, argues that none of the claims in *Bristol I* are identical to the claims here because the causes of action in *Bristol I* were based on facts, acts and omissions that predate those in this action. *See* Pl.'s Mem. of Law in Opp. to the Defs.' Mot. to Dismiss ("Pl.'s Mem.") at 3-4. Indeed, Plaintiff states that *Bristol I* sets out claims arising from acts which occurred beginning on January 4, 2008 and running to July 30, 2008 while the instant action is based upon acts commencing July 30, 2008 and ending July 27, 2009. *Id.* at 4

Additionally, the Defendants' further argue that the doctrine of *res judicata* applies as a bar to Plaintiff's claims. *See* Defs.' Mem. at 7-9. The Plaintiff counters that this doctrine is not applicable because there has been no judgment or any other decision on the merits in *Bristol I*. *See* Pl.'s Mem. at 4-5

### *1.* *Duplicative Litigation*

Duplicative litigation is a distinct, but related doctrine to claim preclusion or *res judicata*. See *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir. 2000). The Second Circuit has determined that district courts have the power to dismiss a suit that is duplicative of another federal action unless special circumstances give priority to the second action. *See, e.g., Barclay v. Lowe,* 131 Fed. Appx. 778 (2d Cir. 2005); *Curtis*, 226 F.3d 133 at 138; *Taylor v. Rodriguez,* 238 F.3d 188, 197 (2d Cir. 2001). The rationale for such a determination is that "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis,* 226 F.3d at 138-39. Although there exists no "rigid test" to

apply here, a court reaches a decision by "consider[ing] the equities of the situation when exercising its discretion." *Id.* at 138. Therefore, this Court will examine the similarities between the parties, facts, and claims to determine whether to apply the doctrine of duplicative litigation.

The Plaintiff initiated *Bristol I* in August 2008.[6] *See* Decl. of Liora M. Ben-Sorek ("Ben-Sorek Decl."), Ex. B. In *Bristol I*, the Plaintiff named nearly the identical Nassau County Defendants present here, with the exception of Defendant Detective John Harvey.[7] However, in *Bristol I*, the Plaintiff did not name as defendants any of the Queens County Defendants. *Id.* Furthermore, the underlying facts and claims set forth in the two actions are substantially different. For example, the § 1983 claims against the defendants in *Bristol I* all arise from events leading up to and including Plaintiff's arrest on January 4, 2008 and the circumstances which followed at the NCPD, up through the filing of seven felony complaints and Plaintiff's arraignment in the Nassau County District Court. *See* Ben-Sorek Decl., Ex. B ¶¶ 6-15. Conversely, in this action, the overwhelming number of events and claims associated with those events as alleged by the Plaintiff occurred after July 2008, which was after *Bristol 1* was filed. Moreover, the pleading in the instant case addresses the circumstances and events surrounding Plaintiff's prosecution in Queens County.

However, what makes this determination more difficult is the fact that the specific allegations facing the Nassau County Defendants in this action all appear to arise out of

---

[6]    On December 1, 2008 the Complaint in *Bristol I* was amended before Defendants' answered. *See* 08-CV-3480, DE 13.

[7]    In *Bristol I*, Plaintiff names Sargent William Gunter as a defendant and there is no mention of Detective John Harvey,.

Plaintiff's initial arrest in January 2008, which is the basis of *Bristol I*. *Compare Curtis,* 226 F.3d at140 (finding against duplicative litigation regarding events arising after the amended complaint was filed in the earlier action) *with Lopez,* 361 Fed. Appx. at 226 (finding duplicative litigation where the suits "involve[ ] essentially the same factual background and legal questions"). Therefore, this Court declines to dismiss the instant action pursuant to the doctrine of duplicative litigation without addressing the merits.

### 2.    *Claim Preclusion*

To the extent Defendants' motion papers also contend that this action is barred by the doctrine of *res judicata*, the Court respectfully disagrees. The doctrine of *res judicata,* or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dept. of Corr.,* 214 F.3d 275, 284-85 (2d Cir. 2000) (citing *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). Thus, a subsequent or concurrent action is barred if the defendant shows that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the Plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* However, after a review of the proceedings which have occurred thus far in *Bristol I*, the Court finds that the first requirement is not met since *Bristol I* has not been adjudicated on the merits. In fact, *Bristol I* remains in its early stages as discovery was and remains stayed. Accordingly, the doctrine of *res judicata* does not apply to the instant case.

**B.    Captioned Defendants**

As an initial matter, Plaintiff names as Defendants the Nassau County District Attorney's Office and the Nassau County Police Department.  The Nassau County Defendants argue that such entities cannot be sued.  *See* Defs.' Mem. at 15.  In New York, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and, therefore, cannot sue or be sued."  *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Robischung-Walsh v. Nassau Cnty. Police Dep't*, 699 F. Supp. 2d 563, 565 (E.D.N.Y. 2010) (dismissing claim against Nassau County Police Department as an arm of the municipality)*; Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (finding that Clarkstown Police Department is "not amenable to suit, and no claims can lie directly against them"); *Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2008 WL 905879, at *1 n.2 (E.D.N.Y. Mar. 31, 2008) (dismissing Section 1983 claims against the Nassau County District Attorney's Office on finding that such an entity lacks the capacity to be sued). Because Plaintiff's claims against these entities are more appropriately brought against Nassau County, I respectfully recommend to Judge Bianco that the Nassau County Police Department and the Nassau County District Attorney's Office be dismissed from this action, with prejudice.

**C.    Defendants in their Individual Capacities**

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a Plaintiff must allege conduct attributable to a person acting under color of state law which deprived Plaintiff of a right secured by the Constitution or laws of the United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Therefore, a Section 1983 claim has two essential elements: (1) the Defendant acted under color of state law, and (2) as a result of the Defendant's actions, the Plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

### 1. Police Defendants

The Nassau County Defendants first argue that since Plaintiff was convicted of the charged offenses, Plaintiff must lose his Section 1983 claim for false arrest against Defendant Detectives Schepis and Harvey (hereafter, the "Police Defendants") since the Complaint merely alleges that they arrested him without a warrant. *See* Defs.' Mem. at 10. The single allegation against the Police Defendants is that they "arrested plaintiff in Nassau County, without a warrant for alleged violations of Penal Law, 190.80, 155.30, 155.35, 170.10, 170.25." Compl. ¶ 11. These charges were for grand larceny, identity theft, forgery and criminal possession of a forged instrument. Even construing this allegation to assert a claim of false arrest against the Police Defendants, the Court must nevertheless dismiss this action as to these Defendants since Plaintiff's conviction bars this claim from going forward.

A claim of false arrest is premised on a lack of probable cause. *See Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *Dockery v. Tucker*, 73 F. Supp. 2d 224, 231 (E.D.N.Y. 1998). "At common law, because conviction is considered conclusive evidence of probable cause, actions for false arrest . . . are barred if the plaintiff remains convicted of the offense for which he was arrested." *Dockery*, 73 F. Supp. 2d at 231; *see also Cameron*, 806 F.2d at 387 ("[P]laintiff can under no circumstances recover if he was convicted of the offense for which he was arrested" under common-law). This doctrine applies equally in actions alleging false arrest brought pursuant to Section 1983. *See Cameron*, 806 F.2d at 388 ("[W]e see no reason to believe Congress intended that the common-law defense of conviction not be equally applicable to § 1983 claims for arrest without probable cause."). Therefore,

> in order to recover damages for an unconstitutional conviction or imprisonment, a § 1983 plaintiff must demonstrate that 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . .'

*Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

Defendants have furnished the Court with a copy of a Certificate of Disposition from the County Court of Nassau County pertaining to the criminal proceeding against the Plaintiff.[8] *See* Ben-Sorek Decl. Ex. C. The Certification of Disposition establishes that on June 29, 2009,

---

[8] When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts may consider items of which judicial notice can be taken. *See Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). A court may take judicial notice of public documents. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991); *Awan v. Ashcroft*, No. 09-CV-1653, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010) ("On a motion to dismiss, courts may take judicial notice of public records").

Plaintiff was convicted of the crimes for which he was arrested, including grand larceny, criminal possession of a forged instrument, and identity theft. Plaintiff was subsequently sentenced as a second felony offender on September 17, 2009. *Id.* In fact, at the time of this action's commencement, Plaintiff was (and remains) incarcerated as a result of these convictions.[9] Since Plaintiff has failed to demonstrate that his conviction has been invalidated in any manner, the Court must dismiss his false arrest cause of action against Defendants Schepis and Harvey. *See Dockery*, 73 F. Supp. 2d at 232. Since this is the only claim alleged against these Defendants, I respectfully recommend to Judge Bianco that the Complaint, as against Defendants Schepis and Harvey, be dismissed.[10]

### 2. *Nassau District Attorney Defendants*

The Nassau County Defendants also argue that the Complaint should be dismissed because Plaintiff fails to allege any personal involvement of DA Rice or ADAs Doddato and "Jane Doe" (collectively "District Attorney Defendants"). *See* Defs. Mem. at 10-11. Furthermore, even assuming Plaintiff alleged facts establishing a deprivation of a federal right by the District Attorney Defendants, the Defendants maintain that Plaintiff's claims would still fail because the Defendants are shielded by absolute immunity. *See* Defs.' Mem. at 11-14. The Plaintiff, however, argues that (1) this immunity does not protect those acts a prosecutor

---

[9]     In *Bristol I*, the Nassau County Defendants recently advised the court that Plaintiff's criminal conviction is under appeal. *See* 08-CV-3480, DE 53.

[10]     Since the Court has determined that the only cause of action against the Defendant police officers should be dismissed, the Court finds it unnecessary to address whether these Defendants are entitled to qualified immunity at the motion to dismiss stage. Moreover, the Court notes that the cases cited by Defendants to support this proposition were all decided on summary judgment and not on a motion to dismiss. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1990); *Mitchell v. Forsyth*, 472 U.S. 511, 516 (1985); *Magnotti v. Kuntz*, 918 F.2d 364, 366 (2d Cir. 1990)

performs in an administrative capacity, and (2) the acts alleged against these Defendants fall outside the scope of their official duties. *See* Pl.'s Mem. at 10-11.

### a. Personal Involvement

As was the case with the Police Defendants, the only allegation against ADA Doddato and ADA "Jane Doe" arises from Plaintiff's alleged false arrest. However, as explained *supra*, the false arrest claim is barred by Plaintiff's conviction. *See Cameron*, 806 F.2d at 388. Since Plaintiff did not assert any other allegation against ADA Doddato and ADA "Jane Doe," I respectfully recommend that the Complaint, as proffered against these ADAs, be dismissed.

With regard to DA Kathleen Rice, the Plaintiff identifies her at various times throughout the Complaint. *See,* Compl. ¶¶ 4, 12, 14-15, 35, 40. Plaintiff, however, fails to allege the requisite personal involvement needed to hold Defendant Rice liable. Because *respondeat superior* does not apply in §1983 actions, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Along these lines, an individual defendant cannot be held liable for damages simply because he or she holds a supervisory position. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (finding that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."). Liability may attach if the supervisor "(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who

caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). Notably, after the 2009 Supreme Court decision in *Iqbal*, holding that "a plaintiff must plead that each [ ] defendant, through the official's own individual actions, has violated the Constitution" (*see Iqbal*, 129 S. Ct. at 1948), district courts have found that *Iqbal* has narrowed the grounds upon which supervisors are liable. *See Rahman v. Fischer*, No. 08 Civ. 4368, 2010 WL 1063835, at *4 (S.D.N.Y. Mar. 22, 2010). In fact, one court has subsequently opined that only the first and third factors have survived. *See Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

Here, the Plaintiff's allegations against DA Rice do not fit into any of the permissible categories for § 1983 liability. Plaintiff claims that: (1) the acts alleged in the complaint were committed either on Rice's instruction or with her knowledge and acquiescence (Compl. ¶ 5); (2) Rice failed to intervene, supervise and halt the misconduct of her subordinates (Compl. ¶ 12, 15); (3) Rice willfully failed to cooperate with Defendant Queens DA Brown (Compl. ¶ 14); and (4) ADA Huggard, drafting a letter on behalf of Rice, improperly used the U.S. Postal service to make false representations and to intimidate Plaintiff to relinquish his property (Compl. ¶ 35). There are no allegations in the Complaint of personal involvement by Defendant Rice herself nor are there any facts asserted here to support a conclusion that Rice failed to remedy a violation after learning of it through a report or appeal. Likewise, no facts are proffered to support Plaintiff's claim that DA Rice was grossly negligent in supervising her subordinates (*i.e.* ADAs) or that she created a custom or policy or allowed one to continue after learning of it. Consequently, I respectfully recommend to Judge Bianco that all claims against DA Rice be dismissed.

### b.      *Absolute Immunity*

Notwithstanding the arguments concerning a lack of personal involvement by the District Attorney Defendants, Defendants also claim that Plaintiff is barred from bringing suit against Defendants Rice, Doddato and "Jane Doe" since prosecutors are absolutely immune from any §1983 liability for acts undertaken in the course of their official duties. *See* Defs.' Mem. at 12-14. This Court agrees.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). District courts not only can consider absolute immunity in connection with a motion to dismiss when facts establishing the defense appear directly from the complaint, but are encouraged to do so. *See Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995) (absolute immunity may be decided on 12(b)(6) motion when facts establishing the defense may be "gleaned from the complaint"); *Sykes v. James*, 13 F.3d 515, 521 (2d Cir. 1993) (concluding defendant was "entitled to absolute immunity from section 1983 liability" at the motion to dismiss stage); *Deronette v. City of N.Y.*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) ("[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery."). "This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Deronette*, 2007 WL 951925, at *4 (quoting *Imbler*, 424 U.S. at 419 n.13). Nevertheless, the Second Circuit has made clear that, "when it may not be gleaned from the complaint whether the conduct objected to was

performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *See Hill*, 45 F.3d at 663.

Whether a prosecutor is entitled to absolute immunity turns on "the kind of function the employee is fulfilling in performing the acts complained of." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Such an approach "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *See Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Therefore, "[a]bsolute immunity will apply to a prosecutor's conduct that is 'intimately associated with the judicial phase of the criminal process,' but not to a prosecutor's acts of investigation or administration." *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (quoting *Buckley*, 509 U.S. at 270); *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) ("When a prosecutor is engaged in administrative or investigative activities, he is entitled to qualified immunity."). Pursuant to this functional analysis, a prosecutor's motivation in connection with his acts as advocate are irrelevant. *See Dory*, 25 F.3d at 83 ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate.").

Regarding ADA Doddato and ADA "Jane Doe," the one specific allegation against them is the following:

> The defendants, acting in concert, namely, detective John Harvey and Sergeant Ronald R. Schepis of the N.C.P.D., Laurene Doddato, ADA, Jane Doe, ADA, having proceeded on January 4, 2008, and arrested plaintiff in Nassau County, without a warrant for alleged violations of Penal Law, 190.80, 155.30, 155.35, 170.10, 170.25, ect, immediately thereafter, referred the same charges, supra to the Queens County defendants and hatched the indomitable plot to begin

> a separate prosecution of plaintiff, based on the same above cited
> statutory offenses in Queens County.

Compl. ¶ 11. With regard to the claim that these Defendants referred the same charges to Queens County and plotted to begin a separate prosecution of Plaintiff, it is this Court's view that these actions relate to the initiation of judicial proceedings against the Plaintiff as opposed to actions of investigation or administration. *See Buckley*, 509 U.S. at 273 (finding absolute immunity applies to "[t]hose acts [which] include the professional evaluation of the evidence assembled by the police"); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) ("A prosecutor thus has absolute immunity in connection with the decision whether or not to commence a prosecution."); *Smith v. Gribetz*, 958 F. Supp. 145, 151 (S.D.N.Y. 1997) ("Similarly, a prosecutor's determination of which offenses are to be charged is also immune."). As already discussed, Defendants' motivation in performing such functions is irrelevant. *See Dory*, 25 F.3d at 83; *Shmueli*, 424 F.3d at 237.

However, the more difficult question concerns the allegation that the ADA Defendants, acting in concert with the NCPD, arrested the Plaintiff. Had the ADAs actually partaken or aided in the arrest of Plaintiff with the arresting officers, such conduct would fall outside the parameters of absolute immunity, and instead, would be analyzed under applicable qualified immunity doctrines. *See Carbajal v. County of Nassau*, 271 F. Supp. 2d 415, 421 (E.D.N.Y. 2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability."); *see also Robinson v. Via*, 821 F.2d 913, 918 (2d Cir. 1987) (finding

that absolute immunity does not extend "to a prosecutor's participation in the execution of an arrest warrant since arrests and seizures are normally police functions, and they do not become prosecutorial functions merely because a prosecutor has chosen to participate."). The Complaint sheds no light on what Plaintiff contends the ADAs actually did in conjunction with his arrest on January 4, 2008 – other than the conclusory phrase that they "acted in concert" with the NCPD. *See* Ben-Sorek Decl., Ex. A ¶ 11. It is also worth noting that ADA Doddato and ADA "Jane Doe" are not mentioned again by name anywhere in the 26-page Complaint, including the 27 separate "Causes of Action." Looking back to *Bristol I*, where the allegations are directed solely to employees of Nassau County, provides some helpful clarification here. In describing the facts which gave rise to his claims in *Bristol I*, Plaintiff narrates how NCPD personnel entered his residence without a warrant when he was not at home on December 15, 2007 and returned on several occasions before arresting him while he was riding as a passenger in someone else's vehicle on January 4, 2008. *See* Ben-Sorek Decl., Ex. B ¶¶ 6-11. There is no mention of ADA Doddato being present in any way or participating in the events at Plaintiff's residence or at the time Plaintiff was stopped in the vehicle on January 4, 2008, or arrested, taken into custody and transported to police headquarters. *Id.* ¶¶ 8-10. In fact, ADA Doddato first appears at paragraph 12 of the pleading where Plaintiff asserts that NCPD personnel were conferring with ADA Doddato from the police precinct and that she was providing the police with legal advice for the purpose of putting a case together – all after Plaintiff had been arrested. *Id.* ¶ 12. Plaintiff contends that ADA Doddato failed to intercede and prevent his interrogation at the precinct, without the benefit of his attorney, and that she prepared, with the police officers, seven felony complaints which were lacking in probable cause. *Id.* ¶ 13. Taking the context into account, as

related by Plaintiff in *Bristol I*, Plaintiff's own words demonstrate that ADA Doddato and ADA "Jane Doe" took no part with the arresting officers in the actual arrest of Plaintiff. Consequently, the facts establishing the defense of absolute immunity can be "gleaned from the complaint," *Hill v. City of New York*, 45 F.3d at 663, because the acts alleged include the professional evaluation of evidence assembled by the police, *Buckley*, 509 U.S. at 273, along with ADA Doddato's determination of which offenses would be charged in the seven felony complaints. *Smith v. Gribetz*, 958 F. Supp. at 151. As such, this Court respectfully recommends to Judge Bianco that all claims asserted against ADA Doddato and ADA "Jane Doe" be dismissed on the basis of absolute immunity. Likewise, the Court finds that DA Rice is absolutely immune from suit since none of the alleged facts offered against her can be construed to be acts of investigation or administration. The Court therefore also recommends to Judge Bianco that Defendant Rice be dismissed from this suit on the grounds of absolute immunity.

### D. Defendants in their Official Capacities

Any attempt by Plaintiff to seek liability against the individual Nassau County Defendants in their official capacities fails since such claims are duplicative of the claims asserted against the County. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that suit against those in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (official capacity claim against public officer is a claim against the office held by that person, rather than against the particular individual who occupies that office at the time the claim arose); *Guzman v. Jacobson*, No. 97-CV-3385, 1999 WL 14667, at *2 (E.D.N.Y. Jan. 11, 1999) (suit against the Commissioner of the Department of Corrections, or any ERU officer, in

their official capacities, may be considered the same as an action against the City of New York); *Orange v. County of Suffolk*, 830 F. Supp 701, 706-07 (E.D.N.Y. 1993) (official-capacity claims redundant because claim is made against local governmental entity). In light of the applicable case law cited here, I respectfully recommend to Judge Bianco that all claims asserted against the Nassau County Defendants in their official capacities be dismissed.

### E. Municipal Liability

Lastly, Defendants maintain that Plaintiff cannot establish municipal liability. *See* Defs.' Mem. at 14. Plaintiff, on the other hand, contends that the officials and policy makers of the municipality knew of the pattern of violations which serve as the basis for liability. *See* Pl.'s Mem. at 11-12.

To state a claim for municipal liability under *Monell*, a plaintiff must show (1) a violation of his constitutional rights, and (2) that the violation was caused by a municipal policy or custom. *See Sheikh v. City of New York*, 03-CV-6326, 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008) (citing M*onell*, 436 U.S. at 690-91); *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (the policy or custom must be the actual "moving force" behind the alleged wrong). Even assuming a violation of Plaintiff's constitutional rights, the allegations and claims in the Complaint do not make the requisite showing of municipal liability.

To establish a municipal policy or custom, a plaintiff must establish one of the following elements: (1) a formal policy, promulgated or adopted by Defendants; (2) that an official with policy making authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a "custom or usage" and that the

practice was so widespread as to imply the constructive acquiescence of policy making officials. *Sheikh*, 2008 WL 5146645, at *11 (internal citations omitted). Plaintiff's primary allegation supporting municipal liability is

> predicated upon failure to act and prevent misconduct, with the required degree of fault, demonstrated by proof of foundational background events and circumstances, which established that the policy of inaction and laissez faire, is the functional equivalence of a decision by the Municipality to violate plaintiff's Constitutional rights, in deliberate indifference to his procedural rights, guaranteed by Statutes and due process protected by the Constitution of the United States.

Compl. ¶ 7. "Under certain circumstances, a municipality's failure to act can constitute a policy and thus give rise to liability under Section 1983." *See R.B. ex rel. L.B. v. Bd. of Educ. of the City of N.Y.*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)). However, courts in this Circuit, when dealing with municipal liability claims resulting from conduct of police or prosecutors analyze claims of inaction as alleged failures to train or supervise. *See, e.g., Walker*, 974 F.2d 293, 298-300; *Hewitt v. City of New York*, No. CV 2009-0214, 2011 WL 441689, at *2-3 (E.D.N.Y. Feb. 7, 2011). Moreover, a § 1983 claim against a municipality, pursuant to actions or inactions of prosecutors, hinges on the claims alleged. *See Garcia v. City of New York*, No. 06 Civ. 746, 2007 WL 2844864, at *2 (S.D.N.Y. Sept. 28, 2007) ("In considering whether a district attorney is a municipal policymaker for purposes of § 1982 liability, the Second Circuit distinguishes between a district attorney's prosecutorial and managerial duties."). For example, allegations focusing on the decision to prosecute are not sufficient to state a claim against a municipality "because 'a district attorney in New York State, acting in a quasi-judicial capacity,' in prosecuting a criminal matter represents

the State, not the municipality." *See Hewitt,* 2011 WL 441689, at *3 (quoting Baez *v. Hennessy*, 853 F.2d 522, 536 (2d Cir. 1988)). However, when claims do not involve a prosecutorial decision, but rather, center "on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993).

Even construing Plaintiff's municipal claim as one alleging a failure to supervise and assuming such claims are based on administrative actions of the Nassau County District Attorney's Office, the Plaintiff must still demonstrate that the purported failure rose to the level of deliberate indifference. *See Walker*, 974 F.2d at 297; *Garcia*, 2007 WL 2844864, at *3. To establish "deliberate indifference," the plaintiff must show that:

> [1] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [2] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'

*Hewitt*, 2011 WL 441689, at *3 (quoting *Walker*, 974 F.2d at 297-98). The Court finds that Plaintiff's general and conclusory allegations, without more, do not come near to satisfying the *Walker* requirements.

Moreover, Plaintiff's contention that "[t]he defendants, at all times mentioned, were acting pursuant to orders, directives, customs and policy of the [municipal defendants]" (*see* Compl. ¶ 10) not only fails to allege what the policy or custom is, but also fails to allege the direct causal link between the policy or custom and the constitutional violation. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an

official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City.").   Likewise, Plaintiff's allegation that the Defendants, "under color of their official policy, ordinances and customs, acquiesced and initiated a corrupt pursuit of plaintiff" (*see* Compl. ¶ 15) also fails.  *See Davis v. County of Nassau*, 355 F. Supp. 2d 668, 678 (E.D.N.Y. 2005) ("[M]ere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim 'in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'") (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  Plaintiff has not set forth specific allegations of fact tending to support, even circumstantially, an inference that Nassau County has a custom or policy of violating constitutional rights.  As such, it is my recommendation to Judge Bianco that this claim be dismissed.

### F.      Right to Amend

Notwithstanding my recommendation that the Nassau County Defendants be dismissed from this action, in light of the fact that Plaintiff is proceeding *pro se*, I am further recommending that the Plaintiff be given thirty (30) days to amend his pleading to cure the deficiencies noted, if he is able to do so.  *See Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)) (noting that when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "where a liberal reading of the complaint gives any indication that a valid claim might be stated").  To the extent Plaintiff seeks to allege specific facts and claims against the Nassau County Defendants with regard to their involvement in the circumstances surrounding his "re-arrest" and prosecution in Queens County, Plaintiff should be permitted to do so in this

action.  However, if Plaintiff seeks to re-plead facts and claims regarding his January 4, 2008 arrest and subsequent prosecution by the Nassau County Defendants, he must seek leave of the court in *Bristol I* to move to amend.  If Plaintiff moves to re-plead those facts here, I respectfully recommend that the amendment should not be permitted on the grounds of duplicative litigation. *See Curtis,* 226 F.3d at 138-39 ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.").

## VI.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In addition to opposing Defendants' motion to dismiss, Plaintiff cross-moved for summary judgment.  *See* DE 50.  Besides Defendants' merit based arguments as to why summary judgment should be denied, the Defendants also argue that summary judgment would be premature since the parties have not engaged in any discovery.  *See* Decl. of Jenneane R. Rogers ("Rogers Decl.") ¶ 1; Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Defs.' Opp.") at 4-6.

Under Fed. R. Civ. P. 56, a court " shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  While Rule 56 generally permits parties to "file a motion for summary judgment at any time," the United States Supreme Court has explained that "the rule contemplates that summary judgment will be granted only 'after adequate time for discovery.'" *Patton v. Gen. Signal Corp.*, 984 F. Supp. 666, 670 (W.D.N.Y. 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Therefore, pre-discovery summary judgment is recognized as an exception rather than the rule.  *See Verizon New York Inc. v. Global NAPS, Inc.*, 463 F. Supp. 2d 330, 345 (E.D.N.Y. 2006); *Patton*, 984 F. Supp. at 670.  In fact, the Second Circuit has determined that [o]nly in the rarest of cases may summary judgment be granted against a [party] who has not

been afforded the opportunity to conduct discovery." *Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000); *see also Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983) (stating that the Circuit has "frequently emphasized the critical importance of discovery in the summary judgment context").

In determining whether to grant summary judgment in the absence of discovery, courts consider the following factors:

> (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion

*Wells Fargo Bank NW., N.A. v. Taca Int'l Airlines*, S.A., 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (citing *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)). After considering these factors, the Court finds that Plaintiff's motion is premature.

First, the lack of discovery in this case is not the fault of the Defendants. As Defendants correctly note, "[a]n initial discovery conference has not yet been scheduled in this action." Rogers Decl. ¶ 9. In addition, Defendants properly filed a declaration addressing: (1) the need to obtain facts and documents regarding Plaintiff's arrest and criminal proceedings in Queens County; and (2) how those facts are expected to create a genuine issues of material fact in that the Nassau County Defendants did not participate in the decision to arrest or prosecute Plaintiff in Queens and that the charges were nevertheless separate and different. *See* Rogers Decl. ¶ 17.

Moreover, not only were the Nassau County Defendants not under a legal obligation to begin conducting discovery, but they alert the Court to the fact that the Queens criminal file on Plaintiff is under seal due to the dismissal of the criminal action against Plaintiff. As a result, Defendants are unable to obtain the documents at this time. *Id.* ¶¶ 13-14. Accordingly, the Court recommends to Judge Bianco that Plaintiff's motion for summary judgment be dismissed, without prejudice, as premature and that Plaintiff be given the opportunity to renew his motion at the conclusion of discovery if this case proceeds.

## VII.    CONCLUSION

Based on foregoing, I respectfully recommend to Judge Bianco that Defendants' motion to dismiss be GRANTED and that Plaintiff's cross-motion for summary judgment be DENIED, without prejudice. However, I also recommend that Plaintiff be given 30-days to amend his Complaint based on the information set forth in this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF**, except in the case of a party proceeding *pro se*. *Pro Se* Plaintiff Marcel Bristol must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joseph F. Bianco, and to my chambers as well. Any requests for an extension of time for filing objections must be**

**directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).**

Counsel for the Nassau County Defendants is directed to serve a copy of this Report and Recommendation upon the Plaintiff forthwith by overnight mail and first-class mail and to file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
February 28, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge